UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW LETHBRIDGE and JENNIFER
LETHBRIDGE, as co-personal representatives
of the Estate of ISAAC LETHBRIDGE,

       Plaintiffs,                    Case No. 08-11423

v.                                     Hon. Nancy G. Edmunds

TED FORREST, JOHN VUCETICH,
and CHRISTOPHER JACKSON,
jointly and severally,

       Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS, OR ALTERNATIVELY FOR SUMMARY JUDGMENT [111]**

Plaintiffs Matthew and Jennifer Lethbridge, as co-personal representatives of the
Estate of Isaac Lethbridge, deceased, filed this 42 U.S.C. § 1983 action seeking damages
for the alleged wrongful death of their son Isaac while in foster care.

This matter comes before the Court on Defendants' motion to dismiss, pursuant to
Federal Rule of Civil Procedure 12(b)(6), or alternatively for summary judgment, pursuant
to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion
is GRANTED.

> In so ruling, the Court does not mean to condone or excuse the alleged
> misfeasance of the defendants. The allegations of the complaint describe a
> tragedy that could have been avoided. As explained, however, the allegations
> do not present claims of a constitutional dimension remediable under 42
> U.S.C. § 1983.

*Coker ex. rel. Coker v. Henry*, 813 F.Supp. 567, 573 (E.D. Mich. 1993), *aff'd*, 25 F.3d 1047 (6th Cir. 1994)

## I.    Facts

This case presents a civil rights action under 42 U.S.C. § 1983, "[t]he facts of [which] ... are undeniably tragic." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 191 (1989).

Plaintiffs' son, Isaac, was removed from their care and placed in foster care by the Wayne County Family Court, as a temporary ward of the court. (4th Am. Compl. ¶ 48.) Isaac was placed in the care and custody of the Michigan Department of Human Services (MDHS), pursuant to Mich. Comp. Laws § 400.55(h). (*Id.* ¶ 44.) MDHS thereafter contracted with the Lula Belle Stewart Center (Lula Belle) to provide Isaac with foster care services. (*Id.* ¶ 45.) According to Plaintiffs, Lula Belle was responsible for Isaac's day-to-day foster care, including supervision, protection and medical care. (*Id.*)

Plaintiffs allege that Karl Troy, one of Lula Belle's foster care workers, "was repeatedly notified of signs and symptoms of physical abuse concerning [Isaac], ... but he did nothing to protect him, or to have the ... foster mother, Charlise Rogers, investigated for child abuse or neglect." (*Id.* ¶ 61.) Specifically, Plaintiffs allege that, on August 4, 2006, Troy observed multiple bruises and marks on Isaac's face, including black eyes and bruises on his forehead, chin and cheeks. (*Id.* ¶ 62.) Rogers, the foster care mother, informed Troy that the injuries were the result of an accidental fall at a McDonald's play area that occurred two weeks earlier, on July 21, 2006, during a supervised visitation: a visit that Troy, himself, attended. (*Id.* ¶ 63.) Plaintiffs allege that, rather than initiate an investigation, "Troy left that

obligation to his supervisor .. and ... fellow employee (Maxine Walls) for them to do." (*Id.* ¶ 65.)

Six days after Troy observed the bruises on Isaac's body, on August 10, 2006, Walls called the Wayne County Child Protection Services (CPS) and allegedly spoke with one of CPS' intake workers, Defendant Christopher Jackson. (*Id.* ¶ 66.) According to Plaintiffs, Jackson refused to accept Walls' report of suspected abuse "and further refused to give ... Walls a CPS referral or log # for her required 3200 report." (*Id.* ¶ 67.) Jackson claimed that he did not interpret the call as an incident that rose to the level of reportable abuse. (Defs.' Reply at 6.) As a result, Walls did not file—nor did Troy or any other Lula Belle employee—the mandated 3200 report form with MDHS, as required under Michigan's Child Protection Law. *See* Mich. Comp. Laws § 722.623. (Defs.' Mot. at 10.)

Plaintiffs further allege that Isaac's doctors, Dr. Fogla and Dr. Morris of University Family Physicians, also suspected abuse and may have tried to report it to CPS. (4th Am. Compl. ¶ 69-74.) However, it is unclear whether either doctor ever contacted any Defendant to report the suspected abuse or actually filed a 3200 report with MDHS.[1]

On August 16, 2006, Isaac "was beaten savagely in his foster home, killing him." (4th Am. Compl. ¶ 75.) According to the complaint, "[t]hese injuries and Isaac's ... resulting death, would have been avoided if Defendants had simply done what they were obligated

---

[1] Plaintiffs only allege that Dr. Morris "agreed that a CPS complaint needed to be made on behalf of ... Isaac to [CPS] ... Dr. Morris *requested* the filing of a 3200 Report with CPS." (4th Am. Compl. ¶ 73 (emphasis added).) Nothing in the record, however, indicates that Dr. Morris ever acted upon this request or followed up on it. Plaintiffs' original complaint alleges that neither of the doctors, nor anyone on their behalf ever made an oral report or a written report to CPS. (Compl. ¶ 50.) Nevertheless, this Court's decision is not affected by the doctor's action or inaction.

to do by constitution, and statute, to protect [him] ... from abuse and neglect, and to otherwise ensure his heath, safety and welfare pursuant to his constitutional liberty interests, and his right to procedural and substantive due process, and the Child Protection Act." (*Id.* ¶ 78.) Plaintiffs thereafter filed suit against Defendants on February 28, 2008 in the Wayne County Circuit Court.[2] (Notice of Removal ¶ 1.)

Defendants removed the case to this Court on April 3, 2008 on the basis of federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over Plaintiffs' federal claims, and supplemental jurisdiction over Plaintiffs' state-law claims, pursuant to 28 U.S.C. § 1367, because they are so related to the federal claims set forth in the Complaint that they form part of the same case or controversy. (Notice of Removal ¶¶ 2-3.) On May 14, 2008, the Court, *sua sponte*, remanded Plaintiffs' state law claims. [Docket Text # 12.]

---

[2] Plaintiffs previously filed a state action against Lula Belle (and its employees, Troy and Walls) and the University Family Physicians (and its employees, Dr. Fogla and Dr. Morris). That action was removed to federal court on October 2, 2006 and was assigned to Judge Zatkoff. [No. 06-14335.] On December 12, 2007, that case was dismissed by stipulation after a settlement was reached with the Lula Belle defendants. Plaintiffs' state law claims against the University Family Physicians defendants were remanded to Wayne County Circuit Court where those claims remain pending.

On February 18, 2010, Plaintiffs filed a Fourth Amended Complaint dismissing all

Defendants except Christopher Jackson,[3] John Vucetich,[4] and Ted Forrest.[5] [Docket Text

# 117.] In the complaint, Plaintiffs seek to recover damages pursuant to 42 U.S.C. § 1983

for the alleged violation of Isaac's civil rights. Plaintiffs allege, *inter alia*, that:

> 80. Each of the CPS Defendants had a "special relationship" with Isaac Lethbridge, as a State foster child, and were obligated to protect him from abuse and neglect by properly implementing the Michigan Child Protection Act in Wayne County, as a matter of constitutional due process.

> 81. Each of the CPS Defendants acted in bad faith, recklessly in violation of and otherwise with deliberate indifference of, the Plaintiff's clearly established statutory and constitutional due process rights to protection from child abuse and neglect while in State foster care.

(4th Am. Compl. ¶¶ 80-81.)

Plaintiffs allege both substantive and procedural due process violations. Specifically,

Plaintiffs claim that MDHS has a custom, practice or policy allowing CPS intake workers

to willfully refuse to answer phone calls reporting abuse and neglect while they read the

paper, played computer games or ran personal errands. (4th Am. Compl. ¶ 97.) Plaintiffs

---

[3] Christopher Jackson worked answering the abuse and neglect hotline in the Wayne County CPS intake unit during the night shift. (Jackson Aff., Defs.' Mot., Ex. 4.)
Plaintiffs claim that because Jackson failed to investigate Walls' allegation that Isaac was being abused, that he was subsequently beaten to death.

[4] John Vucetich was a first line supervisor in the Wayne County CPS intake unit during the day shift. (Vucetich Dep., Defs.' Mot. Ex. 3 at 6.)
Plaintiffs claim that Vucetich is liable for Isaac's death because MDHS and CPS had an official policy or custom of allowing protective services intake workers—such as Jackson—to not comply with the statutory requirements of Michigan's Child Protection Law.

[5] From 1998 to 2008, Ted Forrest was employed by MDHS as the manager for the Children's Protective Services Program. In his capacity as manager, Forrest's primary responsibility was to develop CPS policy on a statewide basis that local CPS workers would use in carrying out their responsibilities. (Forrest Aff., Defs.' Mot., Ex. 1.)
Plaintiffs claim that Forrest is liable for the same reasons asserted against Vucetich.

claim that for years MDHS was aware of CPS workers' and supervisors' willful and deliberate refusal to comply with the Michigan Child Protection Law and did nothing to correct the situation. (*Id.* ¶¶ 98-100.) Plaintiffs also claim that Defendants' deliberate indifference violated Isaac's constitutional due process rights by refusing to correct this well known custom, policy or practice of failing to comply with the statutory requirements under the Child Protection Law. (*Id.* ¶ 101.)

This matter is before the Court on Defendants' motion to dismiss, or alternatively for summary judgment.

## II.    Standards

### A.  Rule 12(b)(6) Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) The court is "not bound to accept as true

a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

## B.  Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an

element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. Analysis[6]

Section 1983 establishes a federal cause of action against anyone who acts under the color of state law to deprive a person of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant was acting under color of state law and that the

---

[6] Plaintiffs, in response to Defendants' motion, completely fail to apply the facts of this case to the applicable law. Instead, Plaintiffs—relying on the *Dwayne B, et al. v. Granholm*, No. 06-13548 (E.D. Mich. Oct. 24, 2008) [Docket Text # 148], consent agreement—argue that there was a systemic problem of constitutional magnitude within Michigan's CPS program for which Defendants should be held personally liable. Plaintiffs, however, fail to cite any authority for such a proposition. Plaintiffs merely argue that "[t]he actual victims of the collapse, e.g., abused and neglected children like Isaac Lethbridge, did not receive any financial compensation for the damages done to them." (Pls.' Resp. at 8.)

defendant's conduct deprived the claimant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)).

### A. Section 1983 Liability Against Forrest and Vucetich

#### 1. Individual Liability

To establish individual liability in a §1983 action, the plaintiff must show that the individual defendant was personally liable for the deprivation of his constitutional rights. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). A plaintiff must prove that each defendant "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Gregory v. Louisville*, 444 F.3d. 725, 751 (6th Cir. 2006) (quoting *Leach v. Shelby County Sheriff*, 891 F.2d. 1251, 1246 (6th Cir. 1989)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending employees." *Gregory*, 444 F.3d. at 751.

Liability of supervisory personnel must be based on more the mere right to control employees and cannot be based on simple negligence. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Similarly, supervisory liability under §1983 cannot attach where the allegation of liability is based upon a failure to act. *Gregory*, 444 F.3d at 751. Rather, the supervisor must have actively engaged in unconstitutional behavior. *Id.*

In this case, there is no allegation that either Forrest or Vucetich actively engaged in any unconstitutional behavior. Neither Forrest[7] nor Vucetich[8] knew Isaac, his foster care

---

[7] Forrest had no involvement with the day-to-day operations of the Wayne County CPS unit, did not supervise anyone in that office, nor did he have any oversight of that or any other county office—it was not a part of the duties and responsibilities of the manager of the CPS program to oversee or otherwise monitor whether individual CPS workers were

mother, the Lula Belle employees assigned to manage his care, or any other specific fact alleged by Plaintiffs. Moreover, neither Forrest nor Vucetich directly supervised anyone who allegedly violated Isaac's constitutional or federal statutory rights. Because Plaintiffs have failed to allege or demonstrate that either Forrest or Vucetich had any knowledge of the facts or involvement in the circumstances leading up to the death of Isaac, there is no basis for individual liability against either Forrest or Vucetich.

### 2. Municipal Liability[9]

Although not clearly articulated from the complaint or Plaintiffs' briefing, to the extent that Plaintiffs attempt to plead municipal liability against Defendants (as state actors who have been sued in their individual capacity), the Court finds Plaintiffs' arguments unpersuasive.

A municipality may be held liable under § 1983 if the municipality itself caused the constitutional deprivation. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 (1978). Nevertheless, a municipality is not liable under § 1983 for an injury inflicted solely by employees or agents, as the doctrine of respondeat superior is inapplicable. *Id.* at 691-95.

---

complying with their responsibilities set forth in policy or statute. (Forrest Aff., Defs.' Mot., Ex. 1.)

[8] Between 5:00 p.m. on August 4, 2006, and 8:00 a.m. on August 21, 2006, Vucetich was on vacation in Colorado. (Vucetich Dep., Defs.' Mot., Ex. 3 at 69-70.) Further, Vucetich did not supervise Jackson. (*Id.* at 70.)

[9] A *Monell* type claim does not lie against Defendants Vucetich and Forrest. Plaintiffs are attempting to hold state actors liable in their individual capacities for an alleged systemic and catastrophic failure of the State's child welfare programs: it is the State, not these Defendants, that is the real party in interest. And, Plaintiffs have not pursued a claim—that Isaac's constitutional rights were violated as a result of a state custom or policy—through an official capacity suit against an appropriate state official.

"'It is only when the execution of the government's policy or custom ... inflicts the injury that the municipality may be held liable under § 1983.'" *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (internal quotations and citations omitted). In other words, when the claim is one against a municipality, a plaintiff must show "that the unconstitutional policy existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused his constitutional violation." *Napier v. Madison County Ky.*, 238 F.3d 739, 743 (6th Cir. 2001). Additionally, where the basis for asserting municipal liability is a policy or custom of tolerating violations of federal rights, a plaintiff must establish: (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the municipality; (3) tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the custom was the "moving force" or direct causal link in the constitutional deprivation. *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996).

Here, Plaintiffs have failed to create a genuine issue of material fact with respect to municipal liability. For example, Plaintiffs have failed to present any evidence of "illegal activity." The complaint alleges that the custom or practice consisted of intentionally not answering the hotline, but failing to answer a telephone is not illegal. To the contrary, and as Plaintiffs have alleged that Defendant Jackson, in fact, answered the hotline: a fact that discounts the allegation that the custom, policy, or practice of failing to answer the hotline was a direct causal link in the constitutional deprivation. Moreover, although Plaintiffs have made vague allegations that Defendants were aware that CPS intake workers blatantly refused to answer the hotline, Plaintiffs have not provided factual support beyond their

conclusory allegations.[10] Plaintiffs' bare allegations[11] here are not sufficient. *See Taylor v. Canton, Ohio Police Dept.*, 544 F.Supp. 783, 788 (N.D. Ohio 1982) (holding that a plaintiff must set forth facts showing the existence of an offending custom or policy and mere conclusory allegations are insufficient). Accordingly, the Court finds that Plaintiffs have failed to present sufficient evidence such that a reasonable juror could find that MDHS or CPS had a policy or practice of tolerating federal rights violations.

### B. Federal Constitutional Claims

In any § 1983 action, the exact contours of the underlying right said to have been violated must first be identified. The Supreme Court has repeatedly held that where a particular constitutional Amendment "provides an explicit textual source of constitutional protection" against a particular government behavior, "that Amendment, not the more generalized notion of [fourteenth amendment] 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). There is no

---

[10] According to Defendants, "Plaintiffs have failed to respond to specific discovery requests concerning their allegations that these alleged existed, that the Defendants were aware of them, and that they approved of them. The existence of any such policy or custom has not been otherwise been discovered." (Defs.' Mot. at 17.) Similarly, Defendants contend that "[d]uring discovery the Plaintiffs have failed to produce any documentation supporting the existence of such a custom, policy, or practice despite having been served with specific discovery requests to do so (Exhibit 5, Interrogatories and Request for Production of Documents). Plaintiffs simply chose to avoid answering the discovery requests. The Defendants deny knowledge of any such custom, policy, or practice (Exhibits 1-4)." (Defs.' Mot. at 11.)

[11] Plaintiffs have not established a genuine issue of material fact for trial. Plaintiffs response to Defendants' motion offer the conclusory allegations contained in their complaint. "Plaintiff has alleged (and Plaintiff's experts are expected to opine) that the Defendants each willfully and wantonly violated decedent's constitutional right to safety, security, and protection, and was otherwise deliberately indifferent to his right to safety, security and protection." (Pls.' Resp. at 21.) Such a statement is insufficient to survive Defendants' motion.

12

explicit textual source of constitutional protection against the particular government behavior that Plaintiffs have alleged here so the deprivation is analyzed under the Fourteenth Amendment.

Plaintiffs have attempted to plead both a substantive due process claim and a procedural due process claim. The contours of Plaintiffs' claims, however, are vague at best. When viewing the complaint in the light most favorable to Plaintiffs, Plaintiffs have alleged that Defendants' custom, policy, or practice of refusing to answer the hotline and failing to investigate reports of suspected abuse constitutes deliberate indifference and violated Isaac's substantive due process rights, and that Defendants' failure to comply with the requirements of Michigan's Child Protection Law violated Isaac's procedural due process rights.

### 1. Substantive Due Process

Section 1983 serves to protect both rights secured by the Constitution and rights secured by federal statutes. *Maine v. Thiboutot*, 448 U.S. 1, 4-6 (1980). However, to utilize § 1983, "a plaintiff must assert the violation of a federal right, not merely a violation of federal law." *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)). Plaintiffs' complaint, though inartfully drafted, appears to allege two basis to support their substantive due process claims: deliberate indifference and federal statutory rights.

As discussed below, the Court finds that Plaintiffs have failed to establish a due process violation under deliberate indifference and also under any of the federal statutes or regulations cited. Thus, Plaintiffs have failed to present sufficient evidence such that a reasonable juror could find an actionable substantive due process claim.

13

### a. Deliberate Indifference

Plaintiffs correctly contend that custodial children, like Isaac, have a constitutional "right to be free from the infliction of unnecessary harm ... [while] in state-regulated foster homes." *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 476 (6th Cir. 1990). Specifically, as the *Meador* court held, a substantive due process claim is actionable where a plaintiff sufficiently alleges "that the deliberate indifference of the state officials *in placing* the child in a foster home resulted in a violation of a constitutionally protected liberty interest to be free from the infliction of unnecessary pain." *Id.* (emphasis added). Although "the State may be liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents," the Court finds that Plaintiffs have failed to demonstrate a genuine issue of material fact as to their deliberate indifference substantive due process claim, and that claim accordingly fails as to all Defendants. *DeShaney*, 489 U.S. at 201 n.9.

First, as discussed above, Plaintiffs have failed to establish a genuine issue of material fact regarding the existence of an illegal policy or custom that resulted in a constitutional deprivation. Second, none of the Defendants, including Jackson, had any involvement in the placement or supervision of Isaac while in foster care nor do Plaintiffs' due process claims arise out Isaac's foster care placement and foster care services—Plaintiffs have already litigated, or are currently litigating, the constitutional claims against the people responsible for those acts. *See Lethbridge v. Lula Belle Stewart*, No. 06-14335, 2007 WL 2713733 (E.D. Mich. Sept. 17, 2007). Jackson, specifically, worked answering the abuse and neglect hotline in the Wayne County CPS intake unit, and he was not associated with the placing of Isaac into foster care nor was he responsible for Isaac's

well-being while in foster care. The primary allegation against Jackson is that he refused to accept Walls' report of suspected abuse. Plaintiffs, however, have provided no legal support to demonstrate that this type of behavior is a federal right actionable as a substantive due process claim, and this Court is not persuaded to find an actionable substantive due process right for the conduct alleged here. Accordingly, Plaintiffs' allegations of deliberate indifference cannot survive summary judgment.

### b. Statutory Rights

To further support their substantive due process claim, Plaintiffs argue that three federal statutes—in addition to the broad claim "that the deliberate indifference of the state officials in placing the child in a foster home resulted in a violation of a constitutionally protected liberty interest to be free from the infliction of unnecessary pain"—create individual rights enforceable under § 1983. These three federal statutes include: (1) the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997 (AAA), 42 U.S.C. §§ 620-27, 670-670a; (2) section 5106a of the Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. § 5101 *et seq.*; and (3) applicable federal regulations, 42 C.F.R. §§ 1355.25(a), (e), (h) and 42 C.F.R. §§ 1357.15(t)-(u). The Court discusses each in turn.

The Court rejects Plaintiffs basis for liability under the AAA on two grounds. First, Plaintiffs have failed to specify what statutory provision of the AAA that Defendants allegedly violated. *See Blessing v. Freestone*, 520 U.S. 329, 343 (1997) ("Only when the complaint is broken down into manageable analytic bites can a court ascertain whether each separate claim satisfies the various criteria we have set forth for determining whether a federal statute creates rights."). And, second, even if Plaintiffs could demonstrate a

private cause of action to sue under the AAA, Plaintiffs only have a right to sue for prospective relief, not monetary damages. *See Lesher v. Lavrich*, 784 F.2d 193, 197-98 (6th Cir. 1986) ("It may be reasonable to read the Adoption Assistance Act to permit parents and children affected by the programs it funds to sue to force those programs to comply with the federal funding requirements; however, the instant action presents entirely different issues. Neither appellants' amended complaint, nor either of their briefs even remotely suggest that this action sought the prospective relief of requiring the State to revise its procedures and institute, in the future, 'preplacement preventive service plans' for all child protection cases. Rather, the complaint sought only retrospective relief, in the form of damages for the appellees' past conduct. ... We think it obvious that whatever rights the Adoption Assistance Act might confer on parents, relief ... awarding damages ... would not be available.").

Regarding the alleged violation of section 5106a of the CAPTA, the Sixth Circuit has held that section 5106a does not create rights enforceable in a § 1983 action. *See Tony "L", et al. v. Childers*, 71 F.3d 1182, 1189-90 (6th Cir. 1995) ("Plaintiffs have no enforceable rights under this provision of CAPTA. ... Ultimately, neither CAPTA nor the relevant regulations mandate a particular means of investigation or state what type of actions *must* be taken to protect abused or neglected children. ... Our above analysis indicates we do not think that Congress intended to create a private right of action under the CAPTA provisions we have discussed. [Thus,] Plaintiffs have no claim for a violation of any rights under CAPTA.") (emphasis in original) (internal citation omitted).

The federal regulations Plaintiffs claim that Defendants violated, 42 C.F.R. §§ 1355.25(a), (e), (h) and 42 C.F.R. §§ 1357.15(t)-(u), are non-existent. To the extent that

Plaintiffs are referring to 45 C.F.R., not 42 C.F.R., the Court rejects—for the reasons discussed above—any liability based on those regulations. *See, e.g., Tony "L",* 71 F.3d at 1189 ("[N]either [the statute] *nor the relevant regulations* mandate a particular means of investigation or state what type of actions must be taken to protect abused or neglected children.") (emphasis added).

### 2. Procedural Due Process

Plaintiffs also argue, in opposition to Defendants' motion, that Defendants can be held liable under §1983 based on a procedural due process claim for violating a mandatory provision of state law—Michigan's Child Protection Law.

> Ordinarily, a § 1983 claim must be predicated on the deprivation of a federal constitutional right. However, state law in the form of statutes, rules, regulations or policy statements, may give rise to a protected liberty interest that cannot be infringed absent observance of procedural due process.

*Coker*, 813 F.Supp at 569.

> State-created liberty interests arise when a state places substantive limitations on official discretion. A state substantively limits official discretion by establishing substantive predicates to govern official decisionmaking and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met. The state statutes or regulations in question also must use explicitly mandatory language requiring a particular outcome if the articulated substantive predicates are present. Finally, the statute or regulation must require a particular substantive outcome. State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory.

*Tony "L"*, 71 F.3d at 1185 (internal quotations and citations omitted). "The *mandatory* nature of the regulation is the key, as a plaintiff 'must have a legitimate claim of entitlement to the interest, not simply a unilateral expectation of it.'" *Washington v. Starke*, 855 F.2d

346, 349 (6th Cir. 1988) (quoting *Bills v. Henderson*, 631 F.2d 1287, 1292 (6th Cir. 1980)) (emphasis in original).

In other words, in determining whether state law creates a liberty interest protected by the due process clause, the initial inquiry is whether the state has used explicitly mandatory language in connection with requiring specific substantive predicates to place substantive limitations on official conduct. If the statute uses explicit mandatory language and provides substantive predicates, the second inquiry is whether the state has mandated a specific outcome if the substantive predicates are met. Procedural rights that do not require a particular substantive outcome are not liberty interests protected by the Fourteenth Amendment, even if the right is "mandatory."

Here, Plaintiffs' procedural due process claim rests upon the Michigan Child Protection Law, Mich. Comp. Laws § 722.621 *et seq.*, as they have generally referred the Court without specifying any particular statutes that includes a substantive limitation on official discretion and requires a particular substantive outcome.[12] (*See* Pl.'s Resp. at 26 ("Child Protection Statutes, and the mandatory requirements set forth in the CPS Administrative Regulations which flesh out CPS investigators' legal requirements give rise to protectable liberty interests in the mandatory language of the legal mandates.").) Michigan's

---

[12] To the extent Plaintiffs also rely on state administrative rules or regulations to establish a procedural due process violation, the Court rejects for the reasons given below regarding the Michigan Child Protection Law. Such rules and regulations do "not impose explicit and substantive limitations on defendants' discretionary authority ... It does not create a legitimate claim of entitlement that can be denied only upon observance of procedural due process." *Coker*, 813 F.Supp at 571.

Child Protection Law, in relevant part, defines and requires the reporting of child abuse and neglect. Defendants are alleged to be agents or employees of [MDHS] ... charged with responsibility for investigating reports of suspected child abuse or neglect and for taking necessary action to prevent further abuses and to safeguard and enhance the welfare of the child.

*Coker*, 813 F.Supp at 569. Plaintiffs' claim is premised on Defendants' alleged failure to protect Isaac from harm by failing to accept a report of suspected abuse referral and initiating an investigation. The applicable statute, however, does not mandate any particular outcome. *See Coker*, 813 F.Supp at 570 ("The Michigan Child Protection Law does not prescribe and mandate compliance with specific procedures substantively limiting the discretion of state officers. It is not sufficiently explicit and mandatory and does not create a legitimate claim of entitlement of the nature here claimed."). Because no specific outcome is mandated by state law with respect to such a referral or investigation, any procedural due process liberty interest claim that Plaintiffs may be attempting to assert here fails as a matter of law. *See Tony "L"*, 71 F.3d at 1186 ("The claim of a state-created liberty interest fails, however, because no particular substantive outcome is mandated. The requirement that an investigation be initiated only gives plaintiffs an expectation of receiving a certain process. ... An expectation that some sort of action will be taken is not enough. Rather, a plaintiff must have an expectation that a particular result will follow from a particular, required action. This statute simply does not provide Plaintiffs with such an expectation.").

Even assuming that Walls spoke to Jackson on August 10, 2006 as alleged, Michigan's Child Protection Law does not mandate any specific outcome from the call. Walls may have provided information that she had reasonable cause to suspect abuse or Walls may have conveyed information that suggested the injuries appeared accidental. In both instances no particular outcome by MDHS would have been mandated. *See* Mich.

19

Comp. Laws § 722.623. And, even if Walls had reported suspected abuse or neglect, MDCH is then only required to commence an investigation within 24 hours. Mich. Comp. Laws § 722.628. Again, the outcome of the investigation is not mandated.

> Second, K.R.S. § 620.040 requires the Cabinet to take certain actions upon receiving a report of child abuse. For example, K.R.S. § 620.040(1) requires the Cabinet, upon receiving a report of abuse or neglect, to investigate the matter and to report the matter to the state or county attorney, as well as to the local enforcement agency or the state police. ... Again, these requirements do not mandate any particular substantive result. Rather, they only give Plaintiffs an expectation that a certain procedure will be followed. This is not sufficient to give rise to a state-created liberty interest.

*Tony "L"*, 71 F.3d at 1186. Despite the fact that an investigation would have been required had Walls reported suspected abuse, Michigan's Child Protection Law does not mandate the outcome of that investigation.

Even upon viewing the complaint in the light most favorable to Plaintiffs, they can prove no set of facts in support of their claims that would entitle them to relief. Accordingly, Plaintiffs' procedural due process claims against all Defendants must be dismissed.[13]

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss, or alternatively for summary judgment, is GRANTED.

> s/Nancy G. Edmunds
> Nancy G. Edmunds
> United States District Judge

Dated: April 5, 2010

---

[13] As the Court is granting Defendants' motion on other grounds, it need not reach the merit of Defendants' qualified immunity argument.

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 5, 2010, by electronic and/or ordinary mail.

<u>s/Carol A. Hemeyer</u>
Case Manager